MANNHEIMER v. ROONEY.
Civil Action 1835–M.

District Court, S. D. Florida,
Miami Division.
March 25, 1947.

Jack D. Burris, of Miami Beach, Fla., for plaintiff.

Lawrence A. Schroeder, of Walton, Hubbard, Schroeder, Lantaff & Atkins, all of Miami, Fla., for defendant.

DE VANE, District Judge.

This is a suit to recover treble damages and attorney's fee for the sale of an automobile by defendant to plaintiff as a warranted used car, when in fact, so plaintiff alleges, defendant failed to furnish, in writing, to plaintiff, at the time of the sale, any warranty or guarantee as to the condition of said automobile.

The parties stipulated that at all times concerned herein the defendant was a dealer, within the meaning of MPR 540 and was authorized to sell warranted used cars; that on or about June 8, 1946, defendant sold to plaintiff an Oldsmobile for the sum of $1756.65, which was not in excess of the ceiling price for such car if sold with a warranty; that the maximum ceiling price for said used car without a warranty was, at the time, $1408.87. The issue that the court has to decide is whether or not defendant sold said automobile with a warranty.

The evidence shows that on or about June 7, 1946, plaintiff purchased from de-fendant a Buick automobile and on June 8, 1946, purchased the Oldsmobile in question. Plaintiff understood at the time of the purchase of each automobile that he was buying same with a warranty and paid prices accordingly. Plaintiff denies that defendant furnished, in writing, to him any warranty or guarantee in connection with either sale.

Defendant testified that while he did not deliver a written warranty to plaintiff at the time plaintiff purchased and drove away each car, his reason for failure to do so was the haste of the plaintiff in closing the transactions and keeping appointments. Defendant further testified that either on the afternoon of the sale of the Oldsmobile, or on the following day, he mailed plaintiff written warranties for each car and produced and filed in evidence carbon copies of same. Defendant testified that he prepared the warranties and placed them in an envelope properly addressed to plaintiff and defendant's wife testified to mailing the envelope. Plaintiff denies ever receiving said warranties through the mail.

This court has held in other cases that the failure to execute and deliver a written warranty is of no consequence where the purchaser understands at the time of the purchase that the car is warranted, calls upon the seller to perform under the warranty and the seller does so to the purchaser's satisfaction. The court holds to the same effect in this case. It, therefore, becomes necessary to review the circumstances following this sale for the court to determine the extent of liability, if any, of defendant to plaintiff.

The court permitted the introduction of testimony by defendant touching the sale of the Buick, which is not involved in this case, to plaintiff, as throwing light upon the agreements and understandings of the parties. Within a few days after the Buick automobile was purchased some mechanical defect developed and plaintiff returned to defendant's place of business to have the mechanical defect remedied. Defendant operated no repair shop of his own, but had arranged with Fincher Motors, Inc., Oldsmobile dealers, to do all necessary repair work for him and had properly registered

Fincher Motors, Inc., with the Office of Price Administration as his Service Agency. When plaintiff went to defendant's place of business with the Buick, defendant accompanied him, in the Buick, to the repair shop of Fincher Motors, Inc., where an estimate was made of the cost of the necessary repairs to put the Buick in good operating condition. The estimate came to $50 and defendant agreed to pay his 50% of the total cost, whatever it should be. Plaintiff desired that a Buick repair shop do the repair work on his Buick and informed defendant that if he, defendant, would pay plaintiff $25 plaintiff would take the Buick to a Buick repair shop and have the work done. Defendant paid plaintiff the $25 and took his receipt therefor, which was introduced in evidence in this case.

Plaintiff testified that the defect in the Oldsmobile did not develop until he had operated the car for some days; that the principal defect was in the steering which did not show up until the car was driven over rough roads. The parties could not fix the exact date on which plaintiff brought the Oldsmobile back to defendant for adjustment, but they agreed it was subsequent to the date when the Buick had been taken by plaintiff to defendant and that it was about a week prior to July 2, 1946. The evidence shows that when plaintiff went to see the defendant about the repair work on the car defendant told plaintiff to take the automobile to Fincher Motors, Inc., for an inspection for the purpose of having the repair work done and that defendant instructed plaintiff to talk with a certain employee of Fincher Motors, Inc. The evidence shows that plaintiff carried out these instructions of defendant and the employee in question advised plaintiff that no work could be done on the automobile for several days and directed plaintiff to return in about a week. Evidence further shows that plaintiff returned to Fincher Motors, Inc., with his Oldsmobile on July 2, 1946. The employee with whom he had talked the previous week was not there on that date. The evidence shows that this employee, who was Manager of the Repair Department of Fincher Motors, Inc., had gone on his vacation June 30, 1946, and that another employee, who was a stranger to the plaintiff, was in charge of the repair department. The employee with whom plaintiff talked on his first visit to the repair shop of Fincher Motors, Inc., to have the car repaired, testified that defendant called him and directed him to do the necessary repair work on the Oldsmobile, and that he, defendant, would pay his share of such work as was his liability, but directed the employee not to do any of the work until he had inspected the automobile and had determined with defendant that the work to be done was of the character for which defendant was liable under his warranty. The second employee of Fincher Motors, Inc., with whom plaintiff talked on July 2, 1946, testified that he knew nothing of these facts and was not advised by plaintiff that he had purchased the Oldsmobile from defendant and that the work to be done was work for which defendant was liable under his warranty. Fincher Motors, Inc., charged plaintiff $78.40 for the work done on the Oldsmobile. Plaintiff immediately paid for the work and took the receipted bill to the office of defendant and requested that defendant re-imburse him for 50% of same. This was the first information defendant had that any work had been done on the automobile and relying upon his arrangement with Fincher Motors, Inc., that no work would be done without his authority, defendant refused to pay the 50% of the bill.

Defendant testified he endeavored to explain to plaintiff that Fincher Motors, Inc., had done considerable work on the automobile prior to the purchase of same, by plaintiff, of which plaintiff was well aware, and that bills for same had been exhibited to plaintiff at the time of the purchase of the automobile by him and defendant felt that if anything went wrong with the car it was the result of defective work by Fincher Motors, Inc., and that same should be remedied without any charge to plaintiff or defendant. Plaintiff, however, was unwilling to accept defendant's explanation of the matter and a disagreement between the parties followed, which finally culminated in this litigation.

Section 7(d) of MPR 540 provides that where a used car dealer does not operate a repair shop that he must make

arrangements with a "service supplier" who shall furnish in connection with the sale of a warranted used car a "service supplier's guarantee," which shall be part of the same document that contains the dealer's warranty. During the course of the trial it developed that defendant had not furnished plaintiff with a "service supplier's guarantee," as required by the regulations. Holding as the court does here that the failure to furnish, in writing, to plaintiff, a dealer's warranty is of no consequence, where the dealer offers to live up to his warranty, the court holds that the same rule is applicable to the service supplier's guarantee. The evidence shows that the service supplier stood ready to perform under his guarantee and there is no evidence that plaintiff ever called upon Fincher Motors, Inc., to refund to him 50% of the amount charged for the repair work done on plaintiff's automobile.

The court, therefore, holds that plaintiff is not entitled to recover the difference in price between the Oldsmobile sold under a warranty, and one sold without a warranty.

Section 5(a) of MPR 540 provides that where a dealer refuses to make repairs or replacements in accordance with his warranty and the purchaser has the necessary work done by another, the purchaser shall be entitled to recover an amount not exceeding treble damages, plus attorney's fee, upon the dealer's share of said cost. In such a case the regulation subjects the dealer to all the penalties imposed by Section 205(e) of the Emergency Price Control Act, 50 U.S.C.A.Appendix, § 925(e). The evidence in this case shows that plaintiff paid $78.40 for the repair work done on his Oldsmobile. One-half of this sum is $39.20. The Court is not impressed with the reason defendant gave for his failure to pay his share of the expenses and holds that his refusal to do so constituted a willful violation of the regulations applicable in this case and plaintiff is entitled to recover treble damages in the amount of $117.60. Plaintiff is also entitled to recover, in addition, a reasonable attorney's fee for his attorney in this case. The case has been vigorously contested and

the court holds that plaintiff is entitled to recover the sum of $200 as a reasonable attorney's fee.

A judgment will be entered in accordance with this Memorandum Decision.